## SEVERANCE *v.* CARR.

In general, it is within the sound discretion of the court that tries a cause to permit a
leading question to be put to a witness. And when this power is so exercised, it will
not be a sufficient cause for setting aside the verdict.

To rebut the allegation that a party had stolen certain personal property from a farm
in his occupation, he may be permitted to show the nature of his contract, the char-
acter of his occupation, and that he was acting under a claim of right, and without
any sinister intent.

CASE, for slander. The words alleged in the declaration were,
" Daniel Severance is a thief and a liar, and I can prove it." Plea,
the general issue, with a brief statement of justification.

One of the witnesses called by the plaintiff testified that he heard
the defendant say that the plaintiff had " lied to him and stole from
him." The plaintiff's counsel then asked the witness how certain
he was of the language used by the defendant; and the witness
answered that he thought the language was " lied to him and stole
from him," and the same question and answer were repeated. The
plaintiff's counsel then asked the witness whether or not the words
were " he was a thief and a liar, and he could prove it." The
defendant objected to the question as leading. The court deeming
it proper that a leading question should be put, allowed the ques-
tion proposed to be put, and the defendant excepted; and the
witness answered that the words suggested by the question were
the words used by the defendant.

Under the brief statement of justification, the defendant con-
tended that the plaintiff had stolen certain logs, wood, and bark, of
the defendant.

The plaintiff had made a parol agreement with the defendant to
buy a farm of the defendant for $2300, the plaintiff to have a deed
when he paid $500, and to mortgage the farm back to secure the
balance. And the plaintiff, under this agreement, as purchaser, and
with the consent of the defendant, moved with his family into the
house on the farm, took possession of the farm, and carried it on
one season, but never paid $500, and never received a deed. The
defendant introduced evidence tending to show that it was a part
of the parol agreement that the plaintiff should not cut any green
growth until he should receive a deed; and the plaintiff introduced
evidence tending to show that there was no such agreement. While
the plaintiff was in possession of the farm, he cut certain green
trees thereon, peeled and sold the bark from some of them, drew
some of them to a saw-mill to be sawed, sold some of them for
wood, and used some of them for wood himself. And these were
the logs, wood, and bark, which the defendant claimed that the
plaintiff had stolen; and it was made a question before the jury
whether the plaintiff had taken the logs, wood, and bark, with the
intention necessary to constitute larceny. The plaintiff claimed
that, being in possession of the farm under an agreement to pur-
chase, and expecting to become the owner, he supposed and had
reason to suppose that he had a right to cut and dispose of the trees.

The plaintiff introduced evidence, subject to the defendant's ex-

ception, tending to show that he made some repairs upon the buildings and fences, cut the hay, and carried on the farm as if it were his own. The plaintiff also introduced evidence, subject to the defendant's exception, as to the distance from the farm to the saw-mill.

Subject to the defendant's exception, the plaintiff testified that he took the logs, wood, and bark, because he supposed he had a right to take them.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, and the questions were reserved.

*Burke & Wait,* for the defendant.

*A. F. Snow,* for the plaintiff.

NESMITH, J.    What is a leading question, put to a witness under examination, has recently been considered and settled by this court in the case *Page* v. *Parker,* 40 N. H. 42, and the cases there cited.

It appears that in this case a leading question was put by the counsel of the plaintiff, under the permission of the court, to one of his own witnesses, and upon his direct examination, and against the objection of the defendant. The question is, whether the circumstances of this case were of that peculiar character as to justify the court, for the purposes of justice, in making it the exception to the general rule, thereby allowing the question to be put.

Prof. Greenleaf (1 Greenl. on Ev., sec. 435) states the exceptions to the general rule, where leading questions are permitted to be put by the party calling a witness, and upon his direct examination, as follows : " Where the witness appears to be hostile to the party producing him, or in the interest of the other party, or unwilling to give evidence, or where an omission in his testimony is evidently caused by want of recollection, which a suggestion may assist, or where the transaction involves numerous items or dates, or where, from the nature of the case, the mind of the witness can not be directed to the subject of inquiry without a particular specification of it :" and, after stating some other illustrations, closes the section with the general remark, " That when and where and under what circumstances a leading question may be put, is a matter resting in the sound discretion of the court, and not a matter which can be assigned for error."

In *Nichols* v. *Dowling,* 1 Stark. N. P. C. 81, Lord Ellenborough held, " That a direct interrogatory might be put where it is clear that the mind of the witness should be directly brought into contact with the subject of inquiry." So where the matter to which the witness is examined is merely introductory to that which is material, it is frequently desirable to lead the mind of the witness directly to the subject.    2 Stark. on Ev. 123, sec. 13.

In *Moody* v. *Rowell,* 17 Pick. 498, the court there say, that they " have no doubt that it is within the discretion of a judge at the trial, under particular circumstances, to permit a leading question to be put to one's own witness, as when he is manifestly reluctant to testify, and hostile to the interests of the party calling him, or where he

has exhausted his memory, without stating the particulars required; where it is a proper name or other fact, which can not be significantly pointed to by a general inquiry, or where the witness is a child of tender years, whose attention can be called to the matter required only by a pointed or leading question. This discretionary power, to vary the general rule, is to be exercised only so far as the purposes of justice plainly require it, and is to be regulated by the circumstances of each case."

In the case before us, the plaintiff had called the attention of his witness to the matter material to the issue. The plaintiff had alleged in his declaration that the defendant had said of him, " that he was a thief and a liar, and he could prove it." The witness had already repeated twice that he heard the defendant say, " the plaintiff lied to him and stole from him," or that he thought such was the language used by the defendant. Thus far the plaintiff had not sustained his declaration by the qualified language of his witness. Then the leading question was allowed by the court to be put to the witness by the plaintiff, and the desired answer was elicited, which was competent to sustain the declaration. It appears to us difficult to limit the discretion to be exercised by the judge who tried the case. Did the witness, by design or mistake, in his first and second efforts there, undertake to withhold the true language used by the defendant, and thereby give a false coloring to the transaction? Was he an unwilling witness? or hostile to the interests of the plaintiff? or, being an honest and truthful witness, did his memory of the precise facts or language intended by him to be stated suddenly fail him, so that his recollection needed the prompting that was furnished? If any of these reasons existed in behalf of the witness, then we do not see why the cause of justice was not subserved by permitting the leading question to be put. On the other hand, if the witness evidently had a prevailing strong bias in favor of the plaintiff, and was ready to serve his cause, and willing to adopt and assert what might be suggested for his benefit; if such a witness staggers and falls into confusion, it is not essential to justice that he should be prompted or helped out by the party calling him. We think, therefore, with these views suggested, that it is safe to presume here that the judge who tried the cause exercised a sound discretion in permitting the question to be put, and that, for this cause, the verdict should not be disturbed.

Under the defendant's plea in this case, in order to rebut the allegation that he had stolen certain bark, wood, and logs, of the defendant, it was proper for the plaintiff to show that he was in possession of the farm from which the personal property was taken, under such a contract or agreement to purchase as would wholly repel all presumption of a larceny of the property in question, as charged by the defendant. Hence, we see no reason why the plaintiff should not be allowed to explain the nature of his contract, the character of his occupation, and that, in doing what he did, he was acting under a claim of right, and without any wrong or sinister intent. We think, therefore, that in this case there should be

*Judgment on the verdict.*